UNITED STATES, ex rel. GRAU v. UHL, Acting Commissioner of Immigration.

(District Court, S. D. New York. December 8, 1919.)

1. HABEAS CORPUS ☞54—VAGUE ALLEGATIONS AGAINST OFFICIALS WHO ORDERED PETITIONER'S DEPORTATION NOT CONSIDERED.

    Allegations in an application for writ of habeas corpus by an alien seaman arrested, and held by the immigration authorities for deportation, setting out in an illusive, vague manner that he had been informed that he was to be deported on the ground that he was likely to become a public charge, but that there was no evidence on which to base such finding, and that in reality he was to be deported because he was a member of the Industrial Workers of the World, and that various officials of the Department of Labor had stated he was too clever to afford actual grounds for deportation, are too vague to be considered by the courts.

2. HABEAS CORPUS ☞53—APPLICATION MUST SHOW CAUSE FOR ALLOWANCE.

    Under Rev. St. §§ 754, 755 (Comp. St. §§ 1282, 1283), relating to habeas corpus, writ of habeas corpus will not be issued as a matter of course, but it must preliminarily appear that there was cause for its allowance, and if the application shows there is no ground for allowance such application must be denied.

3. HABEAS CORPUS ☞4—COURTS CANNOT INTERFERE IN DEPORTATION PROCEEDINGS UNTIL ALIEN HAS APPEALED TO SECRETARY OF LABOR.

    Where a question of fact is involved, the courts will not interfere in behalf of the alien ordered to be deported, who had not appealed from the decision of the immigration authorities to the Secretary of Labor, as authorized by Act Feb. 5, 1917, § 17 (Comp. St. 1918, § 4289¼ii.)

Habeas Corpus. Application by the United States, on the relation of Jose Grau, for writ of habeas corpus to be directed to Byron H. Uhl, as Acting Commissioner of Immigration at the Port of New York. Application denied.

Chas. Recht, of New York City, for relator.
David V. Cahill, of New York City, for the United States.

MAYER, District Judge. The petition alleges that after certain proceedings, this court (per Knox, D. J.) held that relator, being a seaman, "was entitled to the benefit of provisions of section 34 of Act Feb. 5, 1917, c. 29, 39 Stat. 896 (Comp. St. 1918, § 4289¼s) namely, to be brought before a board of special inquiry for examination as to his qualifications for admission to the United States." The petition then continues:

"Subsequently, and on the 20th day of November, 1919, relator was brought before a board of special inquiry for hearing as to his right to enter the United States. That for more than two hours said board questioned relator as to his political and industrial views, laying special stress on his membership and affiliation in the Industrial Workers of the World. At the conclusion of said hearing relator was informed that he was to be excluded on the ground that he was likely to become a public charge.

"There is absolutely no evidence on which to base said finding, inasmuch as relator has never had any difficulty in procuring employment, and has always been able to earn sufficient money to maintain himself comfortably. That the conduct of the Department of Immigration and of the members of said board before whom said hearing was held was in manifest abuse of the discretion

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of said board, and the ruling of said board to the effect that alien was likely to become a public charge was in abuse of their discretion and in violation of the constitutional and statutory rights of the relator.

"That the relator was originally arrested on the 26th day of May, 1919, on certain false and malicious information which the government has not been able to prove, and which it has repudiated. That your petitioner is a seaman by profession and wishes to continue to pursue his calling. That your petitioner is informed that it will be a long time before the immigration authorities will be able to effect his deportation, and that therefore your petitioner sues out this writ to obtain relief from the unlawful restraint which is now being imposed upon him, and so that he may obtain employment. Should the Immigration Department be able to effect your relator's deportation speedily, your petitioner will be willing to drop all proceedings under this writ. Petitioner feels, however, in view of his continued confinement since May, 1919, under charges which the immigration authorities afterwards dismissed, that he has suffered great injustice and irreparable injury, and that his continued confinement is merely a persecution on the part of said authorities. Your petitioner therefore feels that there is no evidence on which a charge that relator is likely to become a public charge can possibly be based, and that the ends of justice will be met by the granting of this writ.

"Your petitioner prays for this writ on the further ground that an appeal to the Department of Labor would be futile, in view of the continued persecution of said relator, and in view of the fact that petitioner is informed and believes that the records of the latest hearing before the board of special inquiry have been submitted to the authorities in Washington, that all the facts in regard to this case have been before the officials of the Department of Labor several times, and that petitioner has been informed and believes that the statement has been made by various of the officials that they consider the petitioner a dangerous man and although there is no evidence upon which they seem to be able to effect his deportation, that he should nevertheless be deported. Furthermore, that upon information and belief petitioner has been informed that various officials of the Department of Labor have made statements to the effect that your petitioner is really too clever to be able to afford them some ground upon which to exclude him, and that they nevertheless felt, in spite of the lack of evidence, that they would be doing the proper thing by deporting him. Your petitioner respectfully says that there is no basis for such statements, and that they are made merely to carry to a victorious conclusion the original efforts made to deport deponent."

[1] The foregoing extract is set forth in full in order to point out the loose allegations as to unnamed officials of the Department of Labor and the reprehensible nature of the petition in setting forth that an appeal to an administrative department charged by law with performing certain duties "would be futile." If the allegations set forth in the petition are true or have any basis of fact, then the petitioner must state what he knows on knowledge or what he has been informed and believes and must set forth the grounds and sources of his information and belief. In calling attention to the character of this petition, it may be observed that the court is of opinion that hereafter counsel will be held responsible for submitting petitions containing loose general allegations as to the conduct of unnamed officials. If officials have acted unlawfully or wrongfully, they should be named, and the good repute of any department of government or of any officials should not be indefinitely and vaguely assailed. The attorney for a petitioner must be willing that names, facts, and incidents shall be set forth in order to enable the particular officials concerned to answer any allegations. Petitions such as this should not be countenanced nor sponsored by members of the bar.

[2, 3] The impression seems to have become current that the court must allow a writ of habeas corpus as matter of course, no matter what the petition may set forth or fail to set forth. The writ is one of the great safeguards of the liberty of the individual; but, in order to prevent its abuse, it must preliminarily appear that there is cause for its allowance. Thus it is provided in sections 754 and 755 of the United States Revised Statutes (Comp. St. §§ 1282, 1283) as follows:

"Application for writ of habeas corpus shall be made to the court, or justice, or judge authorized to issue the same, by complaint in writing, signed by the person for whose relief it is intended, setting forth the facts concerning the detention of the party restrained, in whose custody he is detained, and by virtue of what claim or authority, if known. The facts set forth in the complaint shall be verified by the oath of the person making the application."

"The court, or justice, or judge to whom such application is made shall forthwith award a writ of habeas corpus, unless it appears from the petition itself that the party is not entitled thereto. The writ shall be directed to the person in whose custody the party is detained."

Briefly stated, what this petition comes down to is that a board of special inquiry has found, as a fact, that relator is likely to become a public charge. This conclusion relator is entitled to attack. But the procedure preliminary to such attack is clear.

Section 17 of the Act of February 5, 1917 (Comp. St. 1918, § 4289¼ii), provides as follows:

"Boards of special inquiry shall be appointed * * * for the prompt determination of all cases of immigrants detained at such ports under the provisions of the law. * * * Such boards shall have authority to determine whether an alien who has been duly held shall be allowed to land or shall be deported. * . * * Such boards shall keep a complete permanent record of their proceedings and of all such testimony as may be produced before them; and the decisions of any two members of the board shall prevail, but either the alien or any dissenting member of the said board may appeal through the commissioner of immigration at the port of arrival and the Commissioner General of Immigration to the Secretary of Labor, and the taking of such appeal shall operate to stay any action in regard to the final disposal of any alien whose case is so appealed until the receipt by the commissioner of immigration at the port of arrival of such decision which shall be rendered solely upon the evidence adduced before the board of special inquiry. In every case where an alien is excluded from admission into the United States, under any law or treaty now existing or hereafter made, the decision of a board of special inquiry adverse to the admission of such alien shall be final, unless reversed on appeal to the Secretary of Labor. * * *"

In United States v. Tuck, 194 U. S. 161, at pages 167 et seq., 24 Sup. Ct. 621, at page 622 et seq. (48 L. Ed. 917), the court discussing the Chinese Exclusion Act, stated:

"But if the act is valid, even if ineffectual on this single point, then it points out a mode of procedure which must be followed before there can be a resort to the courts. In order to act at all the executive officer must decide upon the question of citizenship. If his jurisdiction is subject to being upset, still it is necessary that he should proceed if he decides that it exists. An appeal is provided by the statute. The first mode of attacking his decision is by taking that appeal. If the appeal fails it then is time enough to consider whether upon a petition showing reasonable cause there ought to be a further trial upon habeas corpus.

"We perfectly appreciate, while we neither countenance nor discountenance, the argument drawn from the alleged want of jurisdiction. But while the

consequence of that argument if sound is that both executive officers and Secretary of Commerce and Labor are acting without authority, it is one of the necessities of the administration of justice that even fundamental questions should be determined in an orderly way. If the allegations of a petition for habeas corpus setting up want of jurisdiction, whether of an executive officer or of an ordinary court, are true, the petitioner theoretically is entitled to his liberty at once. Yet a summary interruption of the regular order of proceedings, by means of the writ, is not always a matter of right. A familiar illustration is that of a person imprisoned upon criminal process by a state court under a state law alleged to be unconstitutional. If the law is unconstitutional the prisoner is wrongfully held. Yet except under exceptional circumstances the courts of the United States do not interfere by habeas corpus. The prisoner must in the first place take his case to the highest court of the state to which he can go, and after that he generally is left to the remedy by writ of error if he wishes to bring the case here. Minnesota v. Brundage, 180 U. S. 499 [21 Sup. Ct. 455, 45 L. Ed. 639]; Baker v. Grice, 169 U. S. 284 [18 Sup. Ct. 323, 42 L. Ed. 748].   *   *   *

"Considerations similar to those which we have suggested lead to a further conclusion. Whatever may be the ultimate rights of a person seeking to enter the country and alleging that he is a citizen, it is within the power of Congress to provide at least for a preliminary investigation by an inspector, and for a detention of the person until he has established his citizenship in some reasonable way. If the person satisfies the inspector, he is allowed to enter the country without further trial. Now, when these Chinese, having that opportunity, saw fit to refuse it, we think an additional reason was given for not allowing a habeas corpus at that stage. The detention during the time necessary for investigation was not unlawful, even if all of these parties were citizens of the United States and were not attempting to upset the inspection machinery by a transparent device. Wong Wing v. United States, 163 U. S. 228, 235 [16 Sup. Ct. 977, 41 L. Ed. 140]. They were offered a way to prove their alleged citizenship and to be set at large, which would be sufficient for most people who had a case and which would relieve the courts. If they saw fit to refuse that way, they properly were held down strictly to their technical rights."

Where, therefore, a question of fact is involved, the statutory remedies and appeals must first be exhausted before this court will entertain an application for a writ of habeas corpus.

As the petition shows on its face that petitioner has not taken his appeal to the Secretary of Labor, as provided by section 17, the application is denied.